UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEVEN BROWN,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:24-cv-30122-KAR |
| ) | |
| SN SERVICING CORPORATION and ) | |
| U.S. BANK TRUST NATIONAL ) | |
| ASSOCIATION AS TRUSTEE OF THE ) | |
| CABANA SERIES III TRUST, ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM
(Dkt. No. 8)

ROBERTSON, U.S.M.J.

Plaintiff Steven Brown[1] ("Plaintiff") filed this declaratory judgment action to challenge

defendant SN Servicing Corporation ("SN Servicing")'s foreclosure on his home, undertaken on

behalf of defendant U.S. Bank Trust National Association as Trustee of the Cabana Series III

Trust ("U.S. Bank") (collectively, "Defendants").  Plaintiff seeks a declaration stating that

Defendants were not entitled to exercise the statutory power of sale because the purported

mortgage assignment to U.S. Bank was invalid and the notice of default and right to cure that SN

Servicing sent to Plaintiff did not comply with the terms of the mortgage.  Defendants have

moved to dismiss Plaintiff's complaint for failure to state a claim.  The parties have consented to

---

[1] The court's docket and filings contain different versions of Plaintiff's first name ("Steve M.,"
"Steven M.," and "Steven").  In the case caption and here, the court uses the version that appears
on the CM/ECF docket.  Otherwise, he is referenced as "Plaintiff."  *See Zaleski v. Costco
Wholesale Corp.,* Civil Action No. 20-30049-MGM, 2023 WL 3679048, at *1 n.1 (D. Mass. Jan.
3, 2023).

1

this court's jurisdiction (Dkt. No. 7).  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  For the reasons

that follow, Defendants' motion is GRANTED in part and DENIED in part.

I.       ALLEGED FACTS AND PROCEDURAL HISTORY

The following facts are drawn from Plaintiff's First Amended Complaint ("FAC") and

documents attached as exhibits to Defendants' motion to dismiss (Dkt. No. 6).  The court accepts

the well-pleaded allegations as true and draws all reasonable inferences in favor of Plaintiff, the

non-moving party.  *See Starr Surplus Lines Ins. Co. v. Mountaire Farms Inc.,* 920 F.3d 111, 114

(1st Cir. 2019) (citing *Fantini v. Salem State Coll.,* 557 F.3d 22, 26 (1st Cir. 2009)).  Ordinarily,

in ruling on a motion to dismiss, a district court may not rely on any document outside the four

corners of the complaint unless the document is attached and incorporated therein.  *See Alt.*

*Energy, Inc. v. St. Paul Fire & Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir. 2001).  "There is,

however, a narrow exception 'for documents the authenticity of which are not disputed by the

parties; for official public records; for documents central to plaintiffs' claims; or for documents

sufficiently referred to in the complaint.'"  *Id.* (quoting *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir.

1993)).  *See Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008)).

Here, the parties agreed at a motion hearing that the court could rely on the documents attached

as exhibits to Defendants' motion to dismiss without converting the motion to one for summary

judgment.

A.       <u>The Property and the Mortgage</u>

On September 17, 2003, Plaintiff acquired the deed to his residence at 124 Littleton

Street in Springfield ("Property") (FAC ¶¶ 10, 11).  On August 25, 2014, Plaintiff granted MERS

a mortgage on the Property to secure a promissory note in the amount of $65,600 in favor of the

lender, Green Tree Servicing LLC ("Green Tree") (FAC ¶ 12; Dkt. No. 9-1; Dkt. No. 9-2).  On

September 8, 2014, the MERS mortgage was recorded in the Hampden County Registry of

Deeds in book 20418 at page 188 (FAC ¶ 12; Dkt. No. 9-2 at 1).  Paragraph 22 of the mortgage,

which included a power of sale, authorized the mortgagee to accelerate the loan and invoke the

statutory power of sale in the event of a default (FAC ¶ 13; Dkt. 9-2 at 16 ¶ 22).  Paragraph 22

also required the mortgagee to comply with certain notice requirements prior to acceleration

(FAC ¶ 13).

       B.       The Alleged Mortgage Assignments

On January 13, 2016, MERS, as nominee for Green Tree, assigned the mortgage to

Ditech Financial LLC ("Ditech") ("First Assignment") (FAC ¶ 14; Dkt. No. 9-3).  On January

14, 2016, the First Assignment was recorded in the Hampden County Registry of Deeds in book

21026 at page 516 (FAC ¶ 14; Dkt. No. 9-3 at 1).

On May 15, 2018, Ditech granted a limited power of attorney to Mission Global, LLC

("Mission Global") (FAC ¶ 16; Dkt. No. 9-4).  The limited power of attorney was signed by

Alton Porter, Ditech Vice President of Loan Servicing, and Wanda Lamb-Lindow, Ditech

Assistant Vice President and Assistant Secretary, notarized, and recorded in the Hampden

County Registry of Deeds in book 22204 at page 314 on June 5, 2018 (FAC ¶ 16; Dkt. No. 9-4).

On August 31, 2018, Mission Global, as attorney-in-fact for Ditech, assigned the

Mortgage to MTGLQ Investors, LP ("MTGLQ") ("Second Assignment") (FAC ¶ 15; Dkt. No.

9-5).  The Second Assignment was signed by "Jennifer Grenier, Vice President," notarized, and

recorded in the Hampden County Registry of Deeds in book 22351 at page 360 on September 10,

2018 (FAC ¶ 15; Dkt. No. 9-5).

On January 9, 2019, MTGLQ assigned the Mortgage to U.S. Bank Trust National

Association as Trustee of the Chalet Series III Trust ("Chalet") ("Third Assignment") (FAC ¶ 17;

Dkt. No. 9-6).  The Third Assignment was recorded in the Hampden County Registry of Deeds

in book 22559 at page 209 on February 19, 2019 (FAC ¶ 17; Dkt. No. 9-6 at 1).

Three days later, on February 22, 2019, Chalet assigned the Mortgage to Defendant U.S.

Bank ("Fourth Assignment") (FAC ¶ 19; Dkt. No. 9-7).  On March 7, 2019, the Fourth

Assignment was recorded in the Hampden County Registry of Deeds in book 22578 at page 442

(FAC ¶ 19; Dkt. No. 9-7 at 1).

      C.      The Right to Cure Notice and Foreclosure

On March 6, 2024, Defendant SN Servicing, as loan servicer for U.S. Bank, sent Plaintiff

a hybrid default notice ("Default Notice") stating that Plaintiff had not made the monthly loan

payments due on December 1, 2023 and January 1, February 1, and March 1, 2024.[2]  The notice

further informed Plaintiff that failure to cure the default by paying the past due amount on or

before June 4, 2024 might result in acceleration of the amounts secured by the mortgage,

foreclosure, and eviction from the property (FAC ¶¶ 21, 22; Dkt. No. 9-8).

On November 13, 2024, Defendants foreclosed on the Property (FAC ¶ 27; Dkt. No. 9 at

3 ¶ 9).

      D.      Procedural History

On August 16, 2024, Plaintiff brought an action in the Hampden Superior Court

Department of the Massachusetts Trial Court (Dkt. No. 1 at 6).  On October 3, 2024, Defendants

filed a notice of removal asserting diversity jurisdiction as the basis for removing the case to this

court (Dkt. No. 1 at 1-4; Dkt. No. 18).  On November 27, 2024, Plaintiff filed the FAC alleging

that Defendants lacked standing to exercise the power of sale and foreclose as the mortgagee

---

[2] A hybrid default notice purports to satisfy the requirements of both Mass. Gen. Laws ch. 244, § 35A and Paragraph 22 of a GSE Uniform Mortgage.  *See Thompson v. JPMorgan Chase Bank, N.A.,* 158 N.E.3d 35, 41, 43 (Mass. 2020).  Only Paragraph 22 is at issue here.

(Count I) and failed to comply with the terms of the mortgage concerning the notice of default

(Count II) (Dkt. No. 6).  Defendants have moved for dismissal of both counts (Dkt. No. 8) and

Plaintiff has opposed the motion (Dkt. No. 14).

## II.    LEGAL STANDARD

To survive a motion to dismiss, a "'complaint must contain enough factual material to

raise a right to relief above the speculative level . . . and state a facially plausible legal claim,'"

*Guerra-Delgado v. Popular, Inc.*, 774 F.3d 776, 780 (1st Cir. 2014) (alteration in original)

(quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011)), "accept[ing] as

true all well-pleaded facts in the complaint and draw[ing] all reasonable inferences in the

pleader's favor."  *Id.* (citing *Tasker v. DHL Ret. Sav. Plan*, 621 F.3d 34, 38 (1st Cir. 2010)).

## III.    ANALYSIS

### A.    Defendants Lacked Authority to Exercise the Statutory Power of Sale and Foreclose (Count I)

In Count I, Plaintiff challenges Defendants' status as "a record mortgagee [that could]

exercise the statutory power of sale" based on the alleged invalidity of the Second, Third, and

Fourth Mortgage Assignments (FAC ¶¶ 28-40). [3]  For their part, Defendants argue that Count I

should be dismissed because Plaintiff lacks legal standing to challenge the validity of the

assignments (Dkt. No. 9 at 6-8).

#### 1.    Plaintiff's Standing to Challenge the Assignments

---

[3] Count I seeks a declaratory judgment that "Defendants are not a record mortgagee who can exercise the statutory power of sale" (FAC ¶ 39).  "A declaratory judgment technically is not a cause of action but prayer for relief."  *Mitchell v. Selene Fin., L.P.,* CIVIL ACTION NO. 23-cv-12698-RGS, 2024 WL 733283, at *1 n.2 (D. Mass. Feb. 22, 2024), *appeal docketed*, No. 24-1237 (1st Cir. Mar. 8, 2024)  (citing *Narragansett Indian Tribe v. R.I. Dep't of Transp.,* 903 F.3d 26, 30-31 (1st Cir. 2018); *Madden v. State Tax Comm'n,* 133 N.E.2d 252, 254 (Mass. 1956)).

"In Massachusetts, a mortgage that includes a power of sale, as Plaintiff's Mortgage does, incorporates by reference the statutory power of sale established under [Mass. Gen. Laws ch.] 183, § 21 and [Mass. Gen. Laws ch.] 244, §§ 11–17C." *Vil v. Wells Fargo Home Mortg.,* Civil Action No. 17-cv-12121-ADB, 2019 WL 569846, at *3 (D. Mass. Feb. 12, 2019) (citing *U.S. Bank Nat'l Ass'n v. Ibanez*, 941 N.E.2d 40, 49–50 (Mass. 2011)). "Under . . . § 21, after a mortgagor defaults in the performance of the underlying note, '[a] mortgage holder may foreclose on a mortgage that includes a power of sale without prior judicial authorization.'" *Id.* (second alteration in original) (quoting *Ross v. Deutsche Bank Nat'l Tr. Co.,* 933 F. Supp. 2d 225, 230 (D. Mass. 2013)). "Recognizing the substantial power that the statutory scheme affords to a mortgage holder to foreclose without immediate judicial oversight, [Massachusetts courts] adhere to the familiar rule that 'one who sells under a power [of sale] must follow strictly its terms.'" *Ibanez*, 941 N.E.2d at 49–50 (second alteration in original) (quoting *Moore v. Dick,* 72 N.E. 967, 968 (Mass. 1905)). *See Eaton v. Fed. Nat. Mortg. Ass'n*, 969 N.E.2d 1118, 1121 (Mass. 2012) ("A foreclosure sale conducted pursuant to a power of sale in a mortgage must comply with all applicable statutory provisions, including in particular [Mass. Gen. Laws ch.] 183, § 21 and [Mass. Gen. Laws ch.] 244, § 14"). "One of the terms of the power of sale that must be strictly adhered to is the restriction on who is entitled to foreclose." *Ibanez,* 941 N.E.2d at 50. "[O]nly a present holder of the mortgage is authorized to foreclose on the mortgaged property . . . ." *Id. See* Mass. Gen. Laws ch. 183, § 21 (In the event of a default, "the mortgagee or his executors, administrators, successors or assigns may sell the mortgaged premises . . . .")

"[A] mortgagor has standing to challenge a mortgage assignment as invalid, ineffective, or void (if, say, the assignor had nothing to assign or had no authority to make an assignment to a particular assignee)." *Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 282, 291 (1st Cir. 2013).

6

That is because a challenge of this sort, if successful, would show that the mortgage assignment was "'of no effect whatsoever,'" *Maxwell v. MTGLQ Invs., L.P.,* Civil Action No. 18-11885-FDS, 2019 WL 438343, at *4 (D. Mass. Feb. 4, 2019) (citation omitted), and that, without title to the mortgage, the assignee lacked "'jurisdiction and authority'" to foreclose on the mortgagor's property. *Ibanez,* 941 N.E.2d at 50 (quoting *Chace v. Morse,* 76 N.E. 142, 144 (Mass. 1905)). *See Wilson v. HSBC Mortg. Servs., Inc.,* 744 F.3d 1, 10 (1st Cir. 2014) (mortgagors have standing to challenge "the foreclosing entity's status as mortgagee of their property."). On the other hand, "a mortgagor does not have standing to challenge shortcomings in an assignment that render it merely voidable at the election of one party but otherwise effective to pass legal title." *Culhane,* 708 F.3d at 291. *See also Sullivan v. Kondaur Cap. Corp.,* 7 N.E.3d 1113, 1116 & n.7 (Mass. App. Ct. 2014).

Plaintiff's claim – that the assignment from Ditech to MTGLQ was void because Mission Global, Ditech's attorney-in-fact, did not have authority to assign the Mortgage to MTGLQ and, consequently, the subsequent assignors in the chain had nothing to assign – is sufficient to establish Plaintiff's standing to challenge the validity of the mortgage assignments and Defendants' concomitant authority to foreclose (FAC ¶¶ 30-39). *See Woods v. Wells Fargo Bank,* 733 F.3d 349, 354 (1st Cir. 2013) ("standing exists for challenges that contend that the assigning party never possessed legal title and, as a result, no valid transferable interest ever exchanged hands."); *Sullivan,* 7 N.E.3d at 1114-16 (plaintiffs had standing to challenge the validity of each assignment in the chain of assignments that led to the foreclosing entity's acquisition of the mortgage upon which it relied to exercise the power of sale). The court now turns to the question of whether Plaintiff has adequately alleged that U.S. Bank was not a valid mortgagee with authority to exercise the statutory power of sale.

2.      Defendants' Status as a Valid Mortgagee with Authority to Foreclose

Defendants' status as the valid mortgagee at the time of the foreclosure sale depends on

the validity of the assignments that began with the Second Assignment from Ditech to MTGLQ

and concluded with the Fourth Assignment from Chalet to U.S. Bank.[4]  To prove that the Fourth

Assignment to U.S. Bank was invalid, Plaintiff must show that the previous assignors in the

chain either had no authority to make an assignment to an assignee or had nothing to assign.  *See*

*Culhane,* 708 F.3d at 291; *Stonecrest Managers, Inc. v. Schreffler*, No. 22-CV-11167-PGL, 2024

WL 5700199, at *12 (D. Mass. Dec. 12, 2024) ("'[W]here an assignment was not "made by a

party that itself held the mortgage" or was acting with the authority to assign it, the assignment is

void ab initio.  A void assignment is a legal nullity . . . .'") (first alteration in original) (quoting

*O'Brien v. Wilmington Tr. Nat'l Ass'n as Tr. to CitiBank, N.A.*, 506 F. Supp. 3d 82, 99 (D. Mass.

2020) (citation omitted)).  Plaintiff alleges that the Second Assignment was void because the

limited power of attorney that Ditech granted to Mission Global did not authorize Mission

Global to assign the Mortgage to MTGLQ (FAC ¶¶ 32, 33; Dkt. No. 9-4; Dkt. No. 9-5).

Massachusetts treats a power of attorney as a "species of contract."  *Grabowski v. Bank*

*of Boston,* 997 F. Supp. 111, 125 (D. Mass. 1997).  "The determination of the legal effect of [a

written power of attorney] is for the court" that affords "its words their plain and ordinary

meaning in the light of the circumstances and in view of the subject matter."  *McQuade v.*

*Springfield Safe Deposit and Tr. Co.,* 129 N.E.2d 923, 925 (Mass. 1955).  The court must

interpret a power of attorney so "as not to extend the authority given to [the attorney-in-fact]

beyond that which is given in terms, or which is necessary and proper for carrying the authority

---

[4] There is no dispute about the validity of the First Assignment from MERS, as nominee for the
original lender, Green Tree, to Ditech (Dkt. No. 9-3).

expressly given into full effect." *Wood v. Goodridge,* 60 Mass. (6 Cush.) 117, 123 (1850). *See*

*Grabowski,* 997 F. Supp. at 125 ("A power of attorney is subject to a special rule of construction

that requires that it be strictly construed to limit authority.") (citing *McQuade,* 129 N.E.2d at

926).

After MERS assigned the Mortgage to Ditech, Ditech executed a limited power of

attorney that states, in relevant part:

> Ditech Financial LLC . . . ("Company") hereby appoints Mission Global, a
> Delaware LLC, . . . ("Vendor") for Federal National Mortgage Association
> ["FNMA"] as its true and lawful attorney-in-fact to act in the Company's name,
> place and stead and for the Company's benefit, for the purpose of performing the
> limited acts described herein in the name of the Company to effectuate the
> transfer, sale, or conveyance *to* [*FNMA*] pursuant to that certain Voluntary Partial
> Cancellation of Servicing Contract Rights Agreement (with Concurrent Sale)
> dated as of May 11, 2018, as the same may be amended, modified, or
> supplemented from time to time . . . between [FNMA] and Company (the
> "Agreement"), of certain mortgage loans subject to the Agreement for which the
> Company is the current lienholder of record . . . .

(Dkt. No. 9-4 at 1) (emphasis added).  Ditech specifically authorized Mission Global, acting on

behalf of FNMA, to "execute, acknowledge, seal and deliver any and all assignments . . . of

mortgages . . . ." (Dkt. No. 9-4 at 1), but the language authorizing Mission Global "to effectuate

the transfer, sale, or conveyance to [FNMA]" supports Plaintiff's contention that Ditech

authorized Mission Global to assign mortgages only to FNMA (Dkt. No. 14 at 5 n.1, 15).  *See*

*Grabowski,* 997 F. Supp. at 125; *see also In re Fry*, Case No: 13-32861-E-13C, 2015 WL

572315, at *6 (Bankr. E.D. Cal. Feb. 3, 2015) (the power of attorney, which explicitly authorized

the attorney-in-fact to modify the mortgage or deed of trust, did not authorize modification of the

promissory note).  Because, at this stage of the litigation, there is nothing before the court to

establish that MTGLQ was FNMA, Plaintiff has plausibly alleged that Mission Global's

purported assignment of the mortgage title to MTGLQ was invalid.  *See Culhane,* 708 F.3d at

291; *In re Hayes,* 393 B.R. 259, 264-65, 268 (Bankr. D. Mass. 2008) (a mortgage assignment was invalid because it was not one of the two kinds of mortgage assignments that the limited power of attorney specifically authorized the attorney-in-fact to execute). *Compare Maxwell,* 2019 WL 438343, at *4 (the defendant did not exceed its authority as assignee under a power of attorney that "expressly disclaimed" its authority to foreclose because it was authorized to assign mortgages and assigned the mortgage to itself before it foreclosed).

Plaintiff further alleges that the invalidity of the Second Assignment to MTGLQ voided the subsequent assignments because "[a] mortgage assignment executed by an assignor who has no interest to assign . . . is void . . . ." *Ross,* 933 F. Supp. 2d at 230 (citing *Culhane,* 708 F.3d at 290-91). Where Plaintiff has plausibly alleged that Ditech's mortgage assignment to MTGLQ was a legal nullity, it follows that the FAC further sufficiently alleges that MTGLQ had nothing to assign to Chalet and Chalet, in turn, had nothing to assign to U.S. Bank (Dkt. Nos. 9-6, 9-7). *See Stonecrest Managers, Inc.,* 2024 WL 5700199, at *12; *Bongaards v. Millen*, 793 N.E.2d 335, 339 (Mass. 2003) ("Where . . . the [assignor] has nothing to convey, . . . [t]he purported conveyance is a nullity, notwithstanding the parties' intent.").

After the purported Fourth Assignment, SN Servicing, acting on behalf of U.S. Bank as mortgagee, exercised the statutory power of sale by foreclosing on the Property on November 13, 2024 (FAC ¶ 27; Dkt. No. 9 at 3 ¶ 9; Dkt. No. 9-2 at 16 ¶ 22). *See* Mass. Gen. Laws ch. 183, § 27; Mass. Gen. Laws ch. 244, § 14. "[A] foreclosing mortgagee must demonstrate an unbroken chain of assignments in order to foreclose a mortgage . . . ," *Sullivan,* 7 N.E.3d at 1119, as it "must hold the mortgage at the time of the . . . sale. . . in order to have the authority to foreclose under the power of sale." *Ibanez*, 941 N.E.2d at 53 ("A foreclosing entity may provide a complete chain of assignments linking it to the record holder of the mortgage, or a single

assignment from the record holder of the mortgage.").  If the Second, Third, and Fourth

Assignments are a nullity, as Plaintiff plausibly alleges, there was a break in the chain of

assignments from Plaintiff, the mortgagor, to U.S. Bank, the purported mortgagee, that would

prevent Defendants from demonstrating that U.S. Bank held the legal title to the mortgage when

SN Servicing foreclosed on Plaintiff's Property on U.S. Bank's behalf.  *See Ross*, 933 F. Supp.

2d at 230 (a void mortgage assignment "does not confer upon the assignee the legal status

required to exercise the power of sale."); *Ibanez,* 941 N.E.2d at 53.  Without the mortgage,

Defendants would lack "'jurisdiction and authority'" to foreclose.  *Mills v. U.S. Bank, N.A.,* 753

F.3d 47, 50 (1st Cir. 2014) (quoting *Ibanez,* 941 N.E.2d at 50).  Therefore, Plaintiff has stated a

viable claim that Defendants' foreclosure on his Property was invalid.

Defendants argue that Plaintiff lacks standing to obtain the relief that he seeks.

According to Defendants, the assignment from Ditech to MTGLQ was a procedural infirmity

that rendered the conveyance voidable in that it was "'injurious to the rights of one party, which

he may avoid at his election,'" *Wilson,* 744 F.3d at 9 (quoting *Ball v. Gilbert,* 53 Mass. (12 Met.)

397, 404 (1847)), because the terms in the limited power of attorney authorized Mission Global

to convey mortgages on Ditech's behalf and the assignment to MTGLQ complied with the

technical requirements of Mass. Gen. Laws ch. 183, § 54B (Dkt. No. 9 at 9-10).[5]  However,

---

[5] In pertinent part, Mass. Gen. Laws ch. 183, § 54B states:

> Notwithstanding any law to the contrary, . . . (2) a release, partial release or
> assignment of mortgage; . . . if executed before a notary public, justice of the
> peace or other officer entitled by law to acknowledge instruments, whether
> executed within or without the commonwealth, by a person . . . purporting to be
> an authorized signatory for [the] entity [holding the mortgage], or acting under
> such power of attorney on behalf of such entity, . . . shall be binding upon such
> entity and shall be entitled to be recorded . . . .

Mass. Gen. Laws ch. 183, § 54B.

Defendants fail to explain how their position squares with the terms of Ditech's limited power of attorney that authorized Mission Global to convey mortgages only to FNMA and with the First Circuit's holding that a mortgage assignment is void if the assignor was without authority to make the assignment to a particular assignee. *See Culhane,* 708 F.3d at 291. The limited power of attorney language in the cases relied on by Defendants is distinguishable from the terms of Ditech's limited power of attorney that, on this record, apparently precluded an assignment to any entity other than FNMA. *Compare Pabla v. U.S. Bank Nat'l Ass'n as Tr. for Structured Asset Secs. Corp. Mortg. Pass-Through Certificates, Series 2005-7XS*, Civil Action No. 1:24-cv-12358-IT, 2024 WL 4505216, at *2, *4 (D. Mass. Oct. 16, 2024) (the limited power of attorney's failure to expressly authorize the assignment of plaintiff's mortgage did not invalidate the assignment; instead, it was a "procedural infirmity" that made the mortgage assignment "voidable, but not void"); *Culley v. Bank of Am., N.A.,* CIVIL ACTION NO. 18-cv-40099-DHH, 2019 WL 1430124, at *13-14 (D. Mass. Mar. 29, 2019) (even if the limited power of attorney did not specifically authorize the attorney-in-fact to execute a foreclosure deed, it was a procedural infirmity that made the assignment voidable because the assignor authorized the attorney-in-fact to take action related to foreclosures.).

By showing that there was a possible break in the chain of mortgage assignments, Plaintiff plausibly alleges that U.S. Bank and SN Servicing were not valid mortgage holders with authority to foreclose. Accordingly, Defendant's motion to dismiss Count I is denied.

---

B.       The Default Notice Complied with the Terms of the Mortgage (Count II)

Plaintiff's second challenge to the validity of the foreclosure sale of the Property alleges

that SN Servicing's Default Notice failed to comply with Massachusetts law (FAC ¶¶ 41-57).

As noted above, "Massachusetts is a 'non-judicial foreclosure state,' meaning that it

allows a mortgagee to foreclose on a mortgaged property without judicial authorization, so long

as the mortgage instrument grants that right by reference to the statutory power of sale."

*Thompson*, 158 N.E.3d at 40 (citing *Pinti v. Emigrant Mortg. Co.*, 33 N.E.3d 1213, 1218 (Mass.

2015)).  "A foreclosing mortgagee, however, 'first [must] comply[ ] with the terms of the

mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a

power of sale.'"  *Id.* (quoting Mass. Gen. Laws ch. 183, § 21).  "Because the power of sale is a

'substantial power' that permits a mortgagee to foreclose without judicial oversight, . . . '"one

who sells under a power [of sale] must follow strictly its terms" . . . .'"  *Fed. Nat'l Mortg. Ass'n*

*v. Marroquin*, 74 N.E.3d 592, 595 (2017) (second alteration in original) (quoting *Pinti*, 33

N.E.3d at 1218).  More specifically, the mortgagee must strictly comply "'with the terms of the

actual power of sale in the mortgage [and] with any conditions precedent to the exercise of the

power that the mortgage might contain.'"  *Thompson,* 158 N.E.3d at 41 (alteration in original)

(quoting *Pinti*, 33 N.E.3d 1218-19 (collecting cases)).  The conditions precedent include "'those

prescribing actions the mortgagee must take in connection with the foreclosure sale – whether

before or after the sale takes place.'"  *Id.* (quoting *Pinti,* 33 N.E.3d at 1220-21).  The failure to

strictly comply with those mortgage terms renders the foreclosure sale void.  *See id.* at 40, 41;

*see also Marroquin,* 74 N.E.3d at 593.

Here, Defendants were required to strictly comply with Paragraph 22's default notice

requirement as a "condition precedent" to conducting a foreclosure sale after Plaintiff defaulted

(Dkt. No. 9-2 at 16 ¶ 22). *Pinti,* 33 N.E.3d at 1219-20. The notice had to inform Plaintiff of his "right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense . . . to acceleration and sale" (Dkt. No. 9-2 at 16 ¶ 22).

> SN Servicing issued a Default Notice to Plaintiff that states, in pertinent part:
>
> Failure to cure your default on or before [June 4, 2024] may result in acceleration of the sums secured by your mortgage without further demand or notice and sale of the property.
>
> If you have not cured the default within 90 days of this notice, SN . . . , at its option, may require immediate payment in full of all sums secured by your [Mortgage] without further demand or notice, and foreclose the [Mortgage] by judicial proceeding and sale of the property and/or invoke the statutory power of sale or any other remedies permitted by applicable law, and/or as provided within your [Mortgage]. . . .
>
> You have the right to reinstate after acceleration and *the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and sale.*

(Dkt. No. 9-8 at 6-7) (emphasis added).

Relying on *Aubee v. Selene Fin. LP*, 56 F. 4th 1 (1st Cir. 2022), Plaintiff claims that SN Servicing failed to comply with Paragraph 22 because it used ambiguous language to describe how Plaintiff could assert his unconditional right to bring an immediate court action to challenge the default (Dkt. No. 14 at 10-13). "[N]otices fall short of strict compliance when they inform borrowers of their rights but do so in a manner likely to cause a reasonable borrower to misunderstand how to assert those rights." *Aubee,* 56 F.4th at 7. *See Thompson,* 158 N.E.3d at 41 ("Massachusetts law . . . requires that any notice given pursuant to paragraph 22 of the GSE Uniform Mortgage, regardless whether hybrid, must be accurate and not deceptive.") (citing *Pinti,* 33 N.E.3d at 1220, 1224); *Marroquin*, 74 N.E.3d at 593 ("[The Supreme Judicial Court has] held that a foreclosure by statutory power of sale pursuant to G. L. c. 183, § 21, and G. L. c.

14

244, §§ 11–17C, is invalid unless the [preforeclosure] notice of default strictly complies with

paragraph 22 of the standard mortgage . . . .") (citing *Pinti*, 33 N.E.3d at 1214, 1218).

> Plaintiff challenges the following Default Notice language:

> If you have not cured the default within 90 days of this notice, SN . . . , at its
> *option*, may . . . foreclose the [Mortgage] by *judicial proceeding* and sale of the
> property *and/or* invoke the statutory power of sale or any other remedies
> permitted by applicable law, *and/or* as provided within your [Mortgage]. . . .

(Dkt. No. 9-8 at 6) (emphasis added).  Plaintiff argues that the notice's use of "option" as well as

"and/or" in relation to a "foreclosure by judicial proceeding" was "inaccurate and potentially

misleading" in Massachusetts, a non-judicial foreclosure state, because it implied that Plaintiff

need not initiate a lawsuit to forestall the foreclosure, but could choose to wait to assert his

defenses in a judicial foreclosure proceeding that Defendants, having the statutory right of sale,

would never initiate.  According to Plaintiff, SN Servicing's failure to comply with Paragraph

22's terms violated Mass. Gen. Laws ch. 183, § 21 and renders void the foreclosure on the

Property (FAC ¶¶ 47, 48, 49; Dkt. No. 14 at 8-14).

The argument Plaintiff advances here has been addressed and rejected by another session

of this court in a case in which Paragraph 22 of the mortgage contract and the mortgagee's

hybrid default notice mirrored the language of the mortgage and notice at issue in the instant

case.  *Compare* Dkt. No. 9-2 at 16 ¶ 22 *with Mitchell,* 2024 WL 733283, at *2 and Dkt. No. 9-8

at 6-7 *with Mitchell*, 2024 WL 733283, at *3.  In *Mitchell*, as here, the plaintiff relied on the First

Circuit's decision in *Aubee* to challenge the defendant's compliance with Paragraph 22 of a

mortgage.  *See Mitchell*, 2024 WL 733283, at *3.  The *Aubee* notice stated: "[y]ou have the right

. . . to assert in the foreclosure proceeding the non-existence of a default and/or the right to bring

a court action to assert the non-existence of a default or any other defense to acceleration,

foreclosure and/or sale of the property."  *Aubee*, 56 F.4th at 3.  The First Circuit found that "[t]he

use of 'and/or' to connect the rights described in the notice" could mislead a mortgagor into thinking that he could await suit by the mortgagee before challenging foreclosure. *Id.* at 7-8. After considering the First Circuit's decision and comparing the language of *Aubee's* notice with the language of the notice at issue in *Mitchell*, the Honorable Richard G. Stearns concluded that the *Mitchell* notice bore "no material similarity to the notice in *Aubee* and as written complie[d] with Massachusetts law." *Mitchell,* 2024 WL 733283 at *3 (citing *Aubee*, 56 F.4th at 7-8).

Judge Stearns' reasoning is wholly persuasive. First, in explaining the mortgagor's right to bring a court action, the Default Notice in this case, like the notice in *Mitchell,* informed Plaintiff: "[y]ou have . . . the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and sale (Dkt. No. 9-8 at 7). *See Mitchell*, 2024 WL 733283 at *3. That sentence does not contain the "and/or" language that the First Circuit found confusing in *Aubee*. *See Aubee*, 56 F.4th at 7-8; *Mitchell,* 2024 733283 at *3. Second, because the language that SN Servicing used in its Default Notice was substantially similar to the language in Paragraph 22 (Dkt. No. 9-2 at 16 ¶ 22; Dkt. No. 9-8 at 7), the notice's use of "may," when viewed in context, does not "'water[] . . . down'" the rights described in that paragraph. *Mitchell,* 2024 WL 733283, at *3 (alteration in original) (quoting and comparing *Marroquin,* 74 N.E.3d at 598 (the notice stating that the borrower "*may* have the right to bring a court action to assert the non-existence of a default or any other defense [the borrower] may have . . . 'significantly, and inexcusably, differed from' the language in paragraph 22 of the mortgage" because it implied that the right was conditional) (alteration in original)). Third, as Judge Stearns found,

> the use of "and/or" in sentences preceding the court-action disclosure would not cause a reasonable mortgagor to misunderstand his or her right to initiate a court action as [Plaintiff] suggest[s]. The previous sentences are wholly unrelated to [Plaintiffs'] ability to defend against default; they merely describe the various

avenues U.S. Bank [as mortgagee] may rely upon if the default is not cured within the specified time.

*Mitchell,* 2024 WL 733283, at *3.  Here, too, SN Servicing's notice is not deceptive or misleading because it advised Plaintiff of his right to bring a court action in the discussion of the mortgagor's rights whereas the "and/or" language is used in the description of the mortgagee's options in the event Plaintiff failed to cure the default (Dkt. No. 9-8 at 6-7).

Because the language in SN Servicing's Default Notice that informed Plaintiff of his right to initiate a lawsuit was essentially the same as the language in Paragraph 22 of the Mortgage, the Default Notice complied with Mass. Gen. Laws ch. 183, § 21's requirement that the notice strictly comply with the mortgage's terms.  Consequently, Defendants' motion to dismiss Count II is allowed.[6]

IV.     CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for failure to state a claim (Dkt. No. 8) is denied as to Count I and allowed as to Count II.  The Clerk's Office is directed to set a mutually convenient date for a scheduling conference.

It is so ordered.

Date:  September 23, 2025                                  Katherine A. Robertson
                                                          KATHERINE A. ROBERTSON
                                                          U.S. MAGISTRATE JUDGE

---

[6] Plaintiff cites a Rhode Island Superior Court case to support his position that judicial foreclosure is uncommon and, therefore, Defendants' use of "judicial proceeding" in the Default Notice is misleading (Dkt. No. 14 at 13-14).  However, cases from other jurisdictions do not have precedential value in this court.  *See Martinez-Alvarez v. Ryder Mem. Hosp., Inc.,* Civil No. 09-2038(JP), 2010 WL 3431653, at *13 (D.P.R. Aug. 31, 2010).  Even if the Rhode Island court's decision applied, it does not change the fact that the term "judicial proceeding" was not used in the section of the Default Notice that notified Plaintiff of his right to initiate a lawsuit and, therefore, Plaintiff has not shown that this aspect of the notice was ambiguous or otherwise deficient.